### UNITED STATES ex rel. DENNEY v. CALLAHAN et al.

(Court of Appeals of District of Columbia. Submitted November 8, 1923. Decided January 7, 1924.)

#### No. 4013.

1. **Mandamus ⊜➤168(3)—Status of relator at date of filing petition controls.**

As respects the admissibility of testimony, *held*, that the status of relator on a list of eligible teachers at the date of the filing of her petition to compel her appointment must control in the determination of her rights.

2. **Schools and school districts ⊜➤133—Rules made by board of education binding on board and have force of law.**

Rules and regulations adopted and promulgated by the board of education under Act June 20, 1906, empowering them to appoint all teachers on the recommendation of the superintendent of schools, have the force and effect of law, unless in conflict with express statutory provisions, and are binding on the board of education in the matter of appointing and promoting teachers.

3. **Schools and school districts ⊜➤139—Permanent vacancy exists where teacher obtains leave of absence, but fails to file pledge to return.**

Where a teacher obtained a leave of absence to pursue a postgraduate course, but failed to file a pledge to return after expiration of the leave of absence, as required by a rule of the board of education, *held*, that during her absence a permanent vacancy existed, notwithstanding a "gentleman's agreement" that she would be permitted to return to her position on completion of her course.

4. **Schools and school districts ⊜➤133—Board of education cannot prejudice rights of eligible teacher by merger of list with list of those passing recent examination.**

Where relator's name was first on the list of eligible teachers, and she had applied for a vacancy, and brought mandamus to compel her appointment, *held*, that the board of education could not thereafter prejudice her rights by merging the rating of those already on the list with those who took a more recent examination, and date its action back to the date of the examination.

5. **Schools and school districts ⊜➤133—Board bound to appoint teacher at head of eligible list.**

Under its rules, the board of education of the District of Columbia *held* without any discretion as to the appointment of the teacher whose name is at the head of the eligible list.

Appeal from the Supreme Court of the District of Columbia.

Mandamus by the United States, on the relation of Louise F. Denney, against D. J. Callahan, President of the Board of Education of the District of Columbia, and others. From a judgment denying the petition, relator appeals. Reversed, and cause remanded for further proceedings.

J. S. Easby-Smith and David A. Pine, both of Washington, D. C., for appellant.

F. H. Stephens and R. L. Williams, both of Washington, D. C., for appellees.

Before SMYTH, Chief Justice, VAN ORSDEL, Associate Justice, and MARTIN, Presiding Judge of the United States Court of Customs Appeals.

---

⊜➤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

VAN ORSDEL, Associate Justice. Appellant, relator below, seeks through the medium of mandamus to compel respondents, school authorities, to appoint her to the position of probationary teacher in the colored public high schools of the District of Columbia.

It appears that relator on March 23, 1921, passed an examination for an appointment to the position of teacher in the colored public high schools. As a result of the examination her name was placed sixth in order from the top of the list. Either by appointment or by expiration of eligibility of those above her on the list, her name became first on May 21, 1922.

The board of education on September 28, 1921, granted one Otelia Cromwell, then a teacher in the colored public high schools, leave of absence without pay for four months to pursue educational training. The leave of absence was extended from time to time to June 30, 1922. At the time the leave of absence was granted Otelia Cromwell, she was classified in class 6, group B; class 6 being the designation used for high school teachers, and group B being the salary designation for teachers receiving a rate of pay higher than those who are appointed as teachers, and have not passed an additional examination entitling them to promotion to the higher rate of pay.

On October 1, 1922, the board of education appointed relator, then fourth on the list of eligibles, to the position of temporary, as distinguished from probationary teacher, to fill the place made vacant by the leave of absence granted Otelia Cromwell. Relator accepted the appointment and served as teacher of English during the scholastic year 1921–22. On May 1, 1922, when relator became first on the list of eligibles, she applied to the superintendent of schools and to the assistant superintendent of colored schools for promotion to class 6, group B, the position alleged to have been made vacant by the leave of absence granted Otelia Cromwell. The superintendent and assistant superintendent denied her request, chiefly on the ground that the authorities would not be justified in filling permanently the position of Otelia Cromwell, as they were committed to her reappointment to the position vacated by her as soon as her leave of absence expired; the assistant superintendent of colored schools stating, as a reason for not appointing relator, that Otelia Cromwell "was, at the time her leave was granted, a teacher of class 6 B," and that no vacancy existed at the time relator's request was made, and denying that the leave granted Otelia Cromwell created a vacancy to be filled by the promotion of a teacher from group A to group B.

On hearing, the court below denied the petition of relator, and from the judgment this appeal was taken.

Respondent Wilkinson, the assistant superintendent of colored schools, testified that:

"A competitive examination in English was held since February 1, 1922, and the relator's present status is not No. 1. He thinks it is No. 8. He thinks this examination was held in April. Relator became No. 1 May 21, 1922. * * * Within a month after that time there was another competitive examination in English which relator did not take. The list merged under the rules, and relator now becomes No. 8."

The court below, interpreting this rather indefinite testimony, found that:

"An examination was held on April 10, 1922, as a result of which the board of education, on June 21, 1922, pursuant to its rules merged the ratings of the candidates of that examination with the ratings held under the then existing eligibility list dating its action back to the date of the examination (April 10, 1922, supra) and the relator then became eighth on the list since which time she has progressed several numbers on the list but has not yet reached the top."

[1] We are not impressed with the materiality of this testimony, since the date when the action of the board was taken, attempting to date its action back to the date of the examination, was subsequent to the filing of the petition in this case. The status of relator at the date of the filing of her petition must control in the determination of her rights. The case turns, we think, upon the single question of whether or not the leave of absence granted Otelia Cromwell created a vacancy which, under the rules of the board, must be filled by promotion of a teacher from class 6, group A, to class 6, group B, and, further, if the holder of the first place on the eligibility list has the clear legal right to such an appointment.

[2] Under the Act of Congress of June 20, 1906, 34 Stat. 316, the board of education is empowered to appoint all teachers on the recommendation of the superintendent of schools. The superintendent, it is conceded, is controlled by the rules of the board of education in making such recommendations. While it may be conceded that the board might exercise the power of appointment in any reasonable manner it might deem proper to adopt, it has in its wisdom elected to exercise this power through certain rules and regulations which it has adopted and promulgated. Being empowered by the act of Congress to make such rules and regulations, they must be deemed to have the force and affect of law, unless they are in conflict with express statutory provisions. In other words, they are binding upon the respondents in the matter of appointing and promoting teachers.

It therefore appears that, if relator became first on the list May 21, 1922, and a vacancy existed by reason of the granting of leave of absence to Otelia Cromwell, and relator held the position of first place on the list until after the institution of this suit, she must prevail. Indeed, this is conceded by counsel for respondents.

[3] Respondents allege, in their answer to the rule to show cause, that the leave of absence granted Otelia Cromwell created only a temporary vacancy, which by the rules of the board was to be filled by probationary appointment; that the board in this case was governed by rule 43j, adopted in 1914, as follows:

"That the board of education upon recommendation of the superintendent of schools may grant leave of absence without pay for educational advantages subject to the limitation hereinbefore specified to officers, teachers and librarians who shall submit a plan of educational work to be undertaken during the period of such leave of absence which plan shall be approved by the superintendent of schools and who shall file with him a pledge to teach in the public schools of the District of Columbia for a period not less than two years after reappointment from such leave of absence; such leave of absence to extend during a definite period not to exceed one year,

and the position so vacated to be filled by a promotion or appointment, with the tenure of office to extend only until the expiration of such leave of absence: Provided, that when such leave of absence terminates the regular employee shall be appointed to his regular position, unless otherwise ordered by the board of education."

The evidence established that Otelia Cromwell verbally submitted a plan of education which she wished to pursue in Yale University to the assistant superintendent of colored schools, together with a verbal request for leave of absence to pursue her work. She filed no pledge with the superintendent of schools, as required by the rule, obligating her to return after the leave of absence expired and teach in the public schools of the District for at least two years.

We think that, if the rules of the board are to be given the force of law, a teacher, obtaining a leave of absence to pursue a postgraduate course of training, must comply strictly with the letter of the rule, in order to retain her position in competition against others who would otherwise be entitled to the position vacated. It is not material that the position was not claimed by any one of those ahead of relator on the list. When she became eligible she laid claim, as she had a right to do, to the vacancy, and the failure of Otelia Cromwell to protect her rights by strict compliance with the rule will not save her, when thrown in competition with one entitled to take advantage of her oversight.

The testimony discloses that, when Otelia Cromwell applied to the assistant superintendent of colored schools for leave of absence, she was insistent that she might be protected in her right, and assured that she would be permitted to return to her position. This assurance the assistant superintendent of colored schools gave in what he described as a "gentleman's agreement." This was held by the court below to constitute an equitable compliance with the rule. In this we think the learned justice fell into error. The rule requires that the pledge must be filed with the superintendent of schools; the inference being that it may serve as notice, not only to the board itself, but to competing teachers, that a vacancy does not exist. In no respect could this "gentleman's agreement" justify a modification of the rule, in a way to deprive relator of the right which lawfully accrued to her. The assistant superintendent of colored schools had no authority to ignore the rules of the board, nor indeed could the board itself abrogate its own rules, to meet the exigencies of a single case, and certainly not to the detriment of a right which had accrued.

[4] Nor are we impressed by the merger theory. When the board on June 1, 1922, merged the ratings of those who had taken the examination on April 10, 1922, with the ratings held on the then existing eligible list, dating its action back to the date of the examination, relator had not only become eligible for appointment to the vacancy created by Otelia Cromwell on September 28, 1921, but she had applied for the position, and, her application being denied, she had instituted this action to enforce her right. It is clear that the board could not prejudice her rights by the order of merger thus made.

[5] Nor is there any discretion left in the board of education under their rules as to the appointment or rejection of a teacher whose name

is at the head of the eligible list. Rule 20 provides for the examination of applicants for positions as teachers by a board of examiners, who are required to keep a permanent record of the standing of each candidate, and to report—

"to the board of education through the superintendent of schools, at the meeting next following the completion of any examination, the names of the successful candidates arranged in order of rank, with a statement showing the total mark of each candidate. The names of such persons shall constitute an eligible list from which appointments shall be made in the order of their rank as vacancies occur in the position for which the candidates have respectively qualified. Any name placed upon the eligible list shall remain thereon without further examination for the period of two years. But any person on the eligible list who fails to do satisfactory work as a substitute or temporary teacher may be removed from said list on recommendation of the superintendent. The board of examiners shall transcribe the names of persons on the eligible list into a book which shall be open to inspection by the members of the board of education."

It thus appears from the foregoing rule that so long as a teacher's name remains on the eligible list "appointments shall be made in the order of their rank as vacancies occur in the position for which the candidates have respectively qualified." Relator's name was on the eligible list and at the head of the list during the time the vacancy in question existed. The board is not in position to question her qualifications for the position, or to insist that the interposition of the court by mandamus would interfere with its discretionary power. A way was provided in the rule for removing relator's name from the list, if her work as a substitute or temporary teacher was unsatisfactory, but this had not been done, and indeed there is no contention in this case that she was not fully qualified for the position to which she aspired, and to which she was entitled by virtue of her place on the eligible list.

The judgment is reversed, with costs, and the cause is remanded for further proceedings.